**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**VALENCIA L. SESSOM,** **PLAINTIFF,**

**VS.** **CIVIL ACTION NO. 2:05CV84-P-B**

**HOME DEPOT U.S.A., INC. and**
**CEDRIC REDMON,** **DEFENDANTS.**

**MEMORANDUM OPINION**

This matter comes before the court upon Defendants' Motion for Summary Judgment [51-1].

After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

**I. FACTUAL BACKGROUND**

**A. Introduction**

Valencia Sessom filed the instant action against her former employer Home Depot U.S.A.,

Inc. and Cedric Redmon, her supervisor at Home Depot, on April 22, 2005. On June 3, 2005 she

filed her Second Amended Complaint in which she alleges that Home Depot violated Title VII by

retaliating against her for filing a sexual harassment complaint two years before against her

supervisor, a third party, while she was working at Target and before she worked for Home Depot.

She asserts that this retaliation occurred while working for Home Depot when her supervisor,

Redmon, transferred her to another Home Depot store in February 2004 and when she was

terminated effective July 21, 2004 from Home Depot. She also claims that Redmon is individually

liable for malicious interference with an employment contract under Mississippi law for his actions

toward her while she worked under him.

The plaintiff alleges that Redmon, who had once worked at Target, was "close friends" with

Jonathon Ellison, the supervisor at Target that allegedly sexually harassed the plaintiff, and his brother, Marvin Ellison, who had also worked at Target but later became the VP of Loss Prevention at Home Depot. It was because of his friendship with Jonathon and Marvin Ellison, the plaintiff alleges, that led Redmon to retaliate against the plaintiff by allegedly manufacturing an excuse to terminate her when she came under his supervision at Home Depot.

## B. Basic Chronology

While working at a Target store as a loss prevention associate, Sessom avers that she filed a complaint for sexual harassment against one of her supervisors, Jonathon Ellison in the summer of 2002. At this time, Jonathon Ellison's brother Marvin Ellison was a director of loss prevention at Target. Also during this time, Cedric Redmon held the same position as Jonathon Ellison with Target, but in Memphis. The plaintiff states that she had little contact with Redmon while they both worked at Target, though at different stores.

Sessom left Target shortly thereafter and was hired by Home Depot in their Horn Lake, Mississippi store on July 8, 2002 as a loss prevention investigator (LPI). Part of the plaintiff's duties in that capacity was to dress in plain clothes and watch for employee or customer theft of merchandise. In the event an LPI suspects such a theft, the LPI must observe strict guidelines set out in Home Depot's External Policy Guidelines when setting about to confront the suspected thief. Sessom signed an acknowledgment of these guidelines.

Sessom maintains that while in the process of changing employment, she learned that Marvin Ellison, the brother of Jonathon Ellison, had taken a position with Home Depot as a VP of Loss Prevention. She avers that when she began her employment at Home Depot, she confided to her District Loss Prevention Manager (DPLM) Nicole DeVries about her previous sexual harassment

charge against Marvin's brother and expressed her concern over her future at Home Depot. The plaintiff claims that Terrence Moore, another manager at Home Depot, heard this conversation. However, the plaintiff points to no testimony by either DeVries or Moore confirming this alleged exchange.

In her September 6, 2002 Performance and Development Summary written by DeVries, the plaintiff was counseled the she needed to improve her performance by locking loose merchandise, increasing her apprehension rate, communicating daily with her manager as to her whereabouts, and completing apprehension reports in a timely manner. In April 2003 DeVries issued two Discipline Notices to the plaintiff. One was for not working her schedule, poor attendance, and not posting her schedule in the managers office. The other was for unsatisfactory physical security standards – *i.e.*, not securing loose merchandise.

It is undisputed that DeVries, a female supervisor, issued these disciplinary measures against the plaintiff before Cedric Redmon came to work for Home Depot.

In June 2003 J.M. Stygles became Sessom's direct supervisor as a loss prevention manager (LPM) at the Horn Lake, Mississippi store. In July 2003 DPLM DeVries was transferred and Cedric Redmon became the DPLM at the Riverdale store in Memphis, Tennessee.

The plaintiff maintains that Redmon immediately began to complain about her performance such as her low apprehension rate, her schedule, etc. She states that Redmon repeatedly "bad mouthed" her in front of other employees and had other employees spy on her for him. She alleges that Stygles knew about the sexual harassment claim and that Stygles believed that Redmon's actions were the result of that knowledge. She also states that Stygles called her into his office and advised her that Redmon instructed him to "get her for her time and attendance" and that she should write

a letter to management. The plaintiff cites to page 20 of Stygles' deposition for these propositions. However, the defendants point out that his actual testimony in this regard was:

> Q:   Do you recall telling Valencia that she could go to HR to report the harassment she was suffering from Cedric Redmon?
>
> A.   Yes.
>
> Q.   And isn't it true, you told her the reason why, you told her she could go to HR was because you felt that the Target incident, where she reported Jonathon Ellison for sexual harassment, was the reason why Cedric was trying to get rid of her?
>
> A.   I didn't tell her that. She felt, in her letter that she had written, she indicated that's what she felt. I told her that if she felt that way she needed to go to HR.

In Stygles' July 2003 Performance and Development Summary of the plaintiff's work, Stygles addressed her low apprehension rates. The plaintiff admits she was counseled about having one of the lowest apprehension rates in the district. On August 7, 2003 the plaintiff received a Discipline Notice from Stygles for her attendance and punctuality.

The plaintiff also avers that she confided her problems with Redmon to another manager, Roy Hill. Hill had also had problems with Redmon, having written a complaint about him to Travis Lawrence, Divisional Human Resources Manager, on August 22, 2003 in which he generally complained of Redmon's management style. With regard to Sessom, Hill wrote that during a conversation in July 2003 with Redmon and Stygles, the plaintiff's name was mentioned whereupon Redmon "immediately got on the negative side about her, that she wasn't doing anything, and told J.M. [Stygles] to fix the problem." Hill also wrote that "[o]n August 4, 2003, Cedric [Redmon] told J.M. in my presence to push out Valencia [Sessom]."

On September 23, 2003 the plaintiff wrote a letter to Travis Lawrence at Home Depot's HR

department regarding Redmon who at this time was stationed at the Home Depot store in Memphis while the plaintiff was still stationed in the Horn Lake, Mississippi store. In this letter she alleges that ever since Redmon came to Home Depot she has "felt nothing but constant intimidation and harassment from him. He has made this a hostile work environment for me to work in. I feel that this constant intimidation is retaliation for a sexual harassment charge that I filed against a former Asset Team Manager at Target by the name of Jonathon Ellison. Jonathon is the younger brother of Marvin Ellison who is now the Vice-President of Loss Prevention at Home Depot and the friend of Cedric Reedman [sic]; who is not the DPLM at Home Depot." Examples of his alleged harassment contained in the letter included constantly singling the plaintiff out, berating her and her work, complaining about her in front of her co-workers, finding fault "with everything that I do from the schedule that I work, to the way that I work it, from the amount of time I spend on the floor, to the associates talking to me and the list goes on."

In Stygles's November 2003 Performance and Development Summary of the plaintiff's work, he addressed her below average apprehension rates, indicated that the plaintiff needed improvement on getting things done, and advised the plaintiff to refrain from socializing in the store with other associates since this would let customers know her identity as a Home Depot employee.

On January 13, 2004 the plaintiff received a Discipline Notice from Stygles for a "bad stop." A bad stop occurs when Home Depot's written External Policy Guidelines governing apprehension are violated, resulting in accusing an employee or customer of merchandise theft even though that person paid for the merchandise. It is undisputed that the plaintiff failed to constantly observe a customer who was suspected of stealing a nail gun, failed to verify that the item was paid for before approaching the customer, issued a verbal warning banning the customer from the store, and

confronted the customer rather than having a manger make the contact, all in violation of Home Depot policies. It is also undisputed that the plaintiff improperly issued a verbal warning to the customer instructing him not to return to the store, referred to as a "trespass warning," even though at this time the plaintiff admits she knew he had paid for the merchandise. In the instance of a non-theft, such a warning should only be issued by a member of management according to the External Policy Guidelines. The plaintiff admitted that she had no authority to issue the "trespass warning."

According to Sessom's then-supervisor Stygles, he discussed the appropriate discipline with DPLM Redmon, who it is undisputed recommended that Sessom not be terminated but rather given final warning counseling regarding bad stops.

Shortly thereafter in February 2004, the plaintiff and two other LPIs within Redmon's district were transferred to other Home Depot stores within the same district. Plaintiff has not provided the names or genders of the other two LPIs who were transferred. According to Redmon, he transferred Sessom because of her lack of productivity at the Horn Lake, Mississippi store.[1] The plaintiff admits that the transfer did not affect her pay, number of hours worked, job duties, or benefits. When the plaintiff was transferred to the Memphis store, she reported directly to Redmon.

On July 15, 2004 the plaintiff filed her first of two charges of discrimination with the EEOC alleging retaliation in the form of the transfer from the Horn Lake, Mississippi store to the Riverdale store in Memphis. In that charge, the plaintiff checked the box indicated for "retaliation" but not for the other categories such as sex, race, or age. The plaintiff wrote in the part designated for the particulars of the charge:

---

[1] The distance from the Horn Lake, Mississippi store to the Riverdale store in Memphis, Tennessee is approximately 20 miles.

I have been subjected to harassment and unwarranted discipline beginning on or about August 7, 2003 and continuing. I was involuntarily transferred on January 5, 2004. I am classified as a Loss Prevention Investigator and have been employed since July 2002.

I believe I am being retaliated against because I voiced opposition against employment practices made unlawful under Title VII of the Civil Rights Act of 1964, as amended, while employed with another employer. I filed a sexual harassment complaint against the brother of my current employer's Vice President of Loss Prevention and a close friend of my District Loss Prevention Manager and direct supervisors, Cedric Reedman [sic]. Prior to being transferred to my present work location Cedric instructed my immediate supervisor, John Stygles, to write me up so they could get rid of me. John followed through on the instructions until I was transferred. On January 5, 2004, Cedric Reedman [sic] transferred me to the Riverdale store where he is my direct supervisor. Since that time I have been placed on final written warning and I am scheduled to work mostly nights notwithstanding the fact I have more seniority than the other Loss Prevention Investigators. Cedric's harassment of me as [sic] caused me severe emotional distress which has resulted in hospitalization. I have complained to Corporate Human Resources concerning the problems I have been experiencing, however, no action has been taken to alleviate the problem.

On July 16, 2004, the next day, the plaintiff was cited for a second "bad stop" after her final warning issued by Stygles after the January 2004 "bad stop." Essentially, Sessom stopped and questioned a female customer regarding the possible theft of a chainsaw blade when the customer had in fact already paid for it. It is undisputed that the plaintiff violated the proper protocols in this stop according to the External Policy Guidelines. Monica Maynard, the HR manager at the Memphis store, participated in a phone conversation with Redmon and his supervisor, Ted Suppinger, regarding this bad stop. According to Maynard, Redmon, and Suppinger, it was Suppinger's decision to terminate the plaintiff. This is undisputed, as is Maynard and Redmon's testimony that Redmon did not even recommend termination after relating the facts of the bad stop to Suppinger.

The plaintiff was terminated effective July 21, 2004.

Home Depot avers that it had no knowledge of the July 15, 2004 EEOC claim until after she

was terminated. In her Second Amended Complaint, the plaintiff writes in paragraph 9 that "[w]hile Defendant had not received formal notice of the charge of July 15, 2004, Plaintiff believes it had actual notice because she mentioned to several persons that she was filing the EEOC charge." In her deposition on pages 197 to 198, the plaintiff avers that she told two coworkers of the charge: Terrence Moore, a fellow LPI, and someone named Theresa at the service desk. On page 198, the plaintiff admits that she did not tell anyone with supervisory authority of the July 15, 2004 EEOC charge before she was terminated effective July 21, 2004.

On July 22, 2004, the day after her termination was effective, the plaintiff filed a second charge with the EEOC. She checked the box for "retaliation" but none of the other boxes for sex, race, age, etc. In the "particulars" section, the plaintiff wrote:

> I was discharged effective July 21, 2004. I was classified as a Loss Prevention Investigator and had been employed since July 2002.
>
> I believe I was retaliated against because I filed an internal complaint of employment discrimination and because I voiced opposition to employment practices made unlawful under Title VII of the Civil Rights Act of 1964, as amended, while employed with a previous employer. I filed a sexual harassment complaint against the brother of Marvin Ellison, VP of Loss Prevention and a close friend of Cedric Redman, District Loss Prevention Manager and my direct supervisor. In September 2003, I filed an internal complaint of employment discrimination against Cedric Redman. I was discharged following an incident involving a suspected shoplifter. The suspected shoplifter was detained by me and Carol _____. It was determined she had not taken the merchandise from the store. I am aware of a similar incident involving another Loss Prevention Investigator, Chris ____, however, no form of disciplinary action was taken against him.

On April 25, 2005 the plaintiff filed her original complaint. On July 19, 2006 the defendants filed the instant motion for summary judgment to dismiss the plaintiff's suit with prejudice.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986).

On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present,

the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l031 (5ᵗʰ Cir. l982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5ᵗʰ Cir. l981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5ᵗʰ Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

## B. Title VII Sexual Harassment or Gender Discrimination

In addition to her Title VII retaliation claim, the plaintiff argues in her response brief that she has a sexual harassment claim since she "has produced overwhelming evidence that she was subjected to severe and pervasive harassment of a non-sexual nature, because of her sex, that altered the terms of her employment." Response Brief at 14. The plaintiff maintains that, "[i]n effect, the

Fifth Circuit held that sexual harassment does not have to be of an overtly sexual nature, only that it creates a hostile work environment because of sex." She cites for this proposition the combination of the decisions in *Green v. The Administrators of the Tulane Educational Fund*, 284 F.3d 642, 656 (5th Cir. 2002); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405 (5th Cir. 2002); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343 (5th Cir. 2001)*; Watts v. Kroger Co.*, 170 F.3d 505 (5th Cir. 1999); and *Wyerick v. Bayou Steel Corporation*, 887 F.2d 1271 (5th Cir. 1989).

In other words, the plaintiff has framed this claim in her response brief as one for hostile work environment sexual harassment based on gender, as opposed to sexual misconduct.

When viewing the language contained in the plaintiff's complaints and her EEOC charges, it is unclear exactly what claim she is asserting other than her retaliation and state law claims. The defendants are correct that the Second Amended Complaint does not clearly allege a claim for sexual harassment of any sort. The introductory paragraph of the Second Amended Complaint states:

> This is an action to recover damages because of severe harassment, altering the conditions of the work place which was carried out because Plaintiff complained about employment discrimination. This suit is filed to recover for termination because Plaintiff had complained about sexual harassment. Additionally, a state law claim for malicious interference with employment.

The first two sentences both allege a claim of retaliation against Home Depot, not sexual harassment or gender discrimination.

Furthermore, in paragraph 12 of her Second Amended Complaint, the plaintiff writes:

> ¶ 12 Plaintiff's rights have been violated in the following respects:
>
> A.    While working at the Horn Lake, Mississippi store, Plaintiff was suffering unwarranted harassment and discipline. In order to put a stop to such harassment, Plaintiff wrote a letter to the Regional Human Resource [sic] Travis Lawrence and her immediate supervisor John Stygles (see "Exhibit A"). Shortly thereafter, Plaintiff was

transferred to the Memphis, Tennessee store and the harassment situation worsened.

B.     While working at the Memphis, Tennessee store, Plaintiff was again subjected to harassment. At this time Plaintiff filed the EEOC.

C.     Plaintiff was finally terminated from her employment with Defendant because she had opposed unlawful sex discrimination and because she had complained about unlawful sex discrimination [sic], and because she had filed an EEOC charge.

Certainly subparagraphs A and C speak only to a retaliation claim. However, subparagraph B is not as clear. Subparagraph B might be construed as a claim for harassment, but the first sentence does not indicate whether the plaintiff is referring to sexual harassment or harassment based on gender. In any event, the second sentence refers to her EEOC charge. It does not specify, however, whether it was her July 15, 2004 charge or her July 22, 2004 charge. Nevertheless, neither EEOC charge clearly indicated allegations of gender discrimination or sexual harassment. As discussed above, only the "retaliation" boxes were checked while those for "sex" were not and the particularized facts were only framed in terms of retaliation.

The Fifth Circuit observed that "[t]he filing of an administrative complaint is ordinarily a jurisdictional prerequisite to a Title VII action." *Dollis v. Rubin*, 77 F.3d 77, 781 (5th Cir. 1995). However, the Court went on to say that "[a] Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Id.* This "rule of reason" is meant to "protect[] unlettered lay persons making complaints without legal training or the assistance of counsel." *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir.

1993).

This court concludes that there was nothing in either EEOC charge that would have led the EEOC to investigate sexual harassment claims in terms of harassment in the form of sexual misconduct. Therefore, any claim of sexual harassment based on sexual misconduct is barred for failure to exhaust her administrative remedies. In any event, there have been no allegations or evidence submitted regarding sexual misconduct.

The court is very doubtful that the plaintiff intended to levy a claim of hostile work environment sexual harassment based on gender in either of her EEOC charges or in her complaints. However, the law cited above mandates this court to decide whether investigation into sexual harassment by the EEOC could have been reasonably expected from the initial charges of discrimination. Even though the plaintiff checked the box for "retaliation" in both charges but did not check the boxes for "sex," there are three particular areas in the charges that could have been construed by the EEOC to include a claim for hostile work environment sexual harassment. First, in the July 15, 2004 charge the plaintiff wrote in the first sentence that "I have been subjected to harassment and unwarranted discipline beginning on or about August 7, 2003 and continuing." Second, in the same charge, the last two sentences also refer to harassment: "Cedric's harassment of me as [sic] caused me severe emotional distress which has resulted in hospitalization. I have complained to Corporate Human Resources concerning the problems I have been experiencing, however, no action has been taken to alleviate the problem." Third, in the July 22, 2004 charge the plaintiff stated that "I am aware of a similar incident involving another Loss Prevention Investigator, Chris _____, however, no form of disciplinary action was taken against him." This could be construed reasonably as a statement regarding gender discrimination since she is complaining about

13

"harassment" in the form of termination for certain behavior when another similarly situated man was not terminated presumably for the same behavior.

The court will give the plaintiff the benefit of the doubt and will assume she in fact alleges a claim for hostile work environment sexual harassment of a non-sexual nature.

Having reviewed the cases cited by the plaintiff for the proposition that there is such a claim, the court concludes that the Fifth Circuit's decision in *Green v. The Administrators of the Tulane Educational Fund* appears to recognize a claim for hostile work environment sexual harassment based on gender, not necessarily sexual advances. Though not clearly. In *Green*, the plaintiff alleged that following a failed consensual sexual relationship with her supervisor, he harassed her because she refused to continue having a casual sexual relationship. She alleged sexual harassment and retaliation claims under Title VII. The defendant argued that the harassment was not due to sex because personal animosity following a failed sexual relationship did not constitute sexual harassment. The Court in *Green* disagreed, concluding that "it was only after the relationship ended that Richardson began to harass her. This fact alone supports a jury's inference that he harassed her because she refused to continue to have a casual sexual relationship with him. As such, we conclude that there was sufficient evidence to support the jury's finding of sexual harassment." 294 F.3d at 656.

The Court in *Green* then cited the Supreme Court's decision in *Oncale v. Sundwoner Offshore Services, Inc.*, 523 U.S. 75 (1998) for the proposition that "Title VII prohibits discriminat[ion] ... because of ... sex in the terms or conditions of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements." *Id.* at 656-57 (citing *Oncale,* 523 U.S. at 79-80). The Fifth Circuit then concluded

that "there [was] sufficient evidence supporting the jury's finding that Richardson's actions were causally related to Green's **gender**." *Id*. at 657 (emphasis added).

This court humbly notes that the decision in *Green* does not establish a bright line rule that there is a cognizable claim under Title VII for hostile work environment sexual harassment based merely on gender without requiring actual sexual misconduct. Indeed, the facts in *Green* involved misconduct of a sexual nature – *i.e.*, behavior based upon a prior sexual relationship between the parties. The other cases cited by the plaintiff also involve sexual misbehavior and not discrimination based on gender in and of itself. In *Wyatt v. Hunt Plywood Co., Inc.*, the plaintiff alleged that her supervisor "harass[ed] her sexually, referring to her in vulgar terms and continually asking her to have sex with him." 297 F.3d at 407. The decisions in *Watts v. Kroger Co.*, 170 F.3d at 507-08, and *Wyerick v. Bayou Steel Corporation*, 887 F.2d at 1272, involved sexual misconduct in the forms of advances and sexual comments. The situation in *Celestine v. Petroleos de Venezuella SA* involved racial discrimination and neither sexual harassment nor gender discrimination. 266 F.3d at 348.

Anecdotally, the very idea of a sexual harassment claim more naturally speaks to sexual misconduct. It would seem better to avoid confusion by distinguishing hostile work environment sexual harassment based on sexual misconduct from hostile work environment based on gender discrimination. In the present case, the plaintiff argues in her briefs a claim based on "sexual harassment" without any reference, allegation, or evidence of sexual misconduct. It would also help to elucidate the matter by not using the terms "sex" and "gender" interchangeably when referring to "sexual" harassment since the most common understanding of "sexual" harassment indicates harassment based on sexual advances and not gender in and of itself.

Assuming that the Court in *Green* did in fact establish a rule that there is a cognizable claim for hostile work environment sexual harassment based on gender and not sexual misconduct, this court now turns to the basic elements required to prove such a claim. In *Green*, the Court wrote that a "plaintiff in a hostile work environment claim must establish that: (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action." 284 F.3d at 655.[2] The Court went on to note that:

> Conduct sufficient to create a hostile working environment must be severe or pervasive. In order to state a cause of action under Title VII, a sexually objectionable environment must be both subjectively and objectively offensive. Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.

*Id*. at 655-56 (internal citations omitted).

There is no dispute that the plaintiff in this case can meet the first element. Indeed, since everyone is a member of a gender, anyone can meet this criteria in a claim for discrimination based on gender.

Having reviewed the evidence in a light more favorable to the plaintiff as the non-movant, the court concludes that there is no evidence creating a genuine issue of material fact to defeat summary judgment on the plaintiff's putative claim for hostile work environment sexual harassment

---

[2] In this section of the opinion in *Green*, the Court did not specifically indicate whether it meant hostile work environment based on sexual harassment or gender discrimination. The plaintiff in that case alleged sexual harassment involving sexual misconduct.

based solely on gender and not sexual misconduct. This is because she has submitted virtually no evidence supporting the second and third elements requiring that she was subjected to unwelcome sexual harassment and the harassment was based on sex, respectively. Other than her unsubstantiated statement in her July 22, 2004 EEOC charge that she was "aware of a similar incident involving another Loss Prevention Investigator, Chris _____, however, no form of disciplinary action was taken against him," the plaintiff has not specifically alleged or submitted evidence that she was treated differently from men because of her gender. Nor has she submitted any other evidence concentrating on discrimination based on gender in and of itself. The record in this action speaks primarily to the plaintiff's core claim of retaliation – *i.e.*, that she was transferred and ultimately terminated by Home Depot as a result of the sexual harassment complaint (based on sexual misconduct) she filed while working at Target against a third-party who she alleges is "close friends" with a man who became her direct supervisor at Home Depot.

## C. Title VII Retaliation

Unlike her claim for hostile work environment sexual harassment based on gender alone, the plaintiff clearly alleges a claim for retaliation.

The elements of a Title VII retaliation claim are: "(1) the plaintiff participated in statutorily protected activity; (2) [s]he received an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Soledad v. U.S. Department of Treasury*, 304 F.3d 500, 506-507 (5th Cir. 2002).

When an employee establishes a prima facie case of retaliation, the employer takes the burden of offering a nonretaliatory reason for its actions. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995). As with the *McDonnell Douglas* burden shifting system, if the employer

proffers a legitimate excuse, the burden shifts back to the plaintiff to prove pretext. *Alexander v. Gerhardt Enterprises*, *Inc.*, 40 F.3d 187, 195 (7th Cir. 1994). This burden requires more than demonstrating that poor decisions were made; the question is not whether the employer made an erroneous decision, rather, it is whether the decision was unlawfully discriminatory. *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318 (5th Cir. 2002).

## a. The Alleged Sexual Harassment Claim at Target

The threshold issue regarding the plaintiff's basic claim that she was retaliated against by Home Depot for a complaint she allegedly filed at Target is whether a subsequent employer can be held liable for retaliating against the plaintiff for a protected activity such as filing a sexual harassment complaint at a former employer.

Certainly, a former employee can sue a former employer for post-employment retaliation such as giving a bad reference. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); *see also Caudhill v. Farmland Indus.*, 919 F.2d 83 (8th Cir. 1999) (a person can sue a former employer for his termination by a subsequent employer if he can prove that the former employer caused his discharge for retaliatory purposes).

After a thorough search of federal caselaw, the court has been unable to find binding authority in the form of a Fifth Circuit or U.S. Supreme Court opinion standing for the proposition that a subsequent employer can be held liable under Title VII for retaliating against its current employee for protected activity by the employee at a former, unrelated employer. Only the Second and the Third Circuits appear to have touched on the idea. In *Austin v Norfolk Southern Corp.*, 158 Fed.Appx. 374 (3d Cir. 2005), an opinion unpublished in the Federal Reporter, the Third Circuit stated that the plaintiff in that case "offers no authority for the proposition that a former employer's

conduct can be imputed to a subsequent employer to show retaliation by the latter." *Id*. at 380. Thus, the Court in *Austin* declined to recognize the proposition. However, the Second Circuit appears to accept the proposition. In *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001), the Second Circuit wrote:

> Indeed, we have permitted a retaliation claim where the entity committing the retaliation was different from the entity about whose employment practices the plaintiff had complained, although we did not specifically analyze that issue, focusing instead on whether the plaintiff had established a causative link between the employee's actions and the employer's alleged retaliation.

*Id*. at 285 (citing *Johnson v. Palma*, 931 F.2d 203, 208 (2d Cir. 1991)).

In this issue of first impression, this court agrees with the Second Circuit approach. This is because even though there are two separate Title VII rights involved – *i.e.*, the right to engage in protected activity and the right not to be retaliated against for so engaging – the right not to be retaliated against is a right owned by the employee regardless of which employer the employee engaged in the protected activity with. The primary focus of 42 U.S.C. § 2000e-(3)(a) is to protect against retaliation. Nothing in the pertinent language of that statute states explicitly whether a future employer may or may not retaliate for protected activity at a prior employer.[3]

Nevertheless, though this court concludes that a subsequent employer may be held liable under § 2000e-3(a) for retaliating against a current employee for engaging in protected activity at a past employer, the plaintiff has no evidence other than bare allegations that she in fact engaged in protected activity at all while at Target. As stated above, in the Fifth Circuit the first element of a retaliation claim requires that the plaintiff be able to prove that she "participated in statutorily

---

[3] 42 U.S.C. § 2000e-3(a) provides in pertinent part that: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter,...."

protected activity." *Soledad*, 304 F.3d at 506-507.

The plaintiff in this case admittedly does not have any evidence that this complaint actually took place other than her bare allegation. The man against whom she allegedly filed the complaint while at Target, Jonathon Ellison, has not been deposed in this case. No other employee of Target has come forth to verify the complaint. No paper evidence of the complaint has been submitted. As noted above, the defendants subpoenaed Jonathon Ellison's employment records whereupon Target replied that "there are no records relating to: Jonathon Ellison ... in the possession of Target. This certification is made following a thorough search of Mr. Ellison's file, carried out under my direction, which revealed no harassment or sexual harassment documents which you had requested." The plaintiff has also submitted no evidence of the names of the other women who also allegedly filed complaints against Jonathon Ellison.

The plaintiff has the burden at the summary judgment stage to set forth all of the evidence creating a genuine issue of material fact. She has not met that burden with regard to submitting evidence that she in fact engaged in protected activity at Target. The plaintiff seeks to proceed to trial based on her word alone that she in fact filed a sexual harassment complaint at Target against a third-party when that party has not been deposed, nor has anyone else from Target been deposed, to verify the existence of and the circumstances surrounding the alleged complaint. The court does not believe that this is sufficient to create a *genuine* issue of material fact warranting a trial.

As cited above,"the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing *sufficient* to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (emphasis added). The relevant

inquiry is whether or not there is *sufficient* disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be *substantial*. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978). That the plaintiff in this case engaged in protected activity is an essential element of her retaliation claim. Because she has submitted neither "sufficient," nor "substantial" evidence to support that element, summary judgment should be granted on her retaliation claim based on her termination.

**b. The September 23, 2003 Complaint Letter at Home Depot**

This leaves the question whether Sessom was retaliated against for the September 23, 2003 complaint she wrote to Home Depot's HR department in which she alleged that she "felt nothing but constant intimidation and harassment from [Redmon]. He has made this a hostile work environment for me to work in. I feel that this constant intimidation is retaliation for a sexual harassment charge that I filed against a former Asset Team Manager at Target by the name of Jonathon Ellison. Jonathon is the younger brother of Marvin Ellison who is now the Vice-President of Loss Prevention at Home Depot and the friend of Cedric Reedman [sic]; who is not the DPLM at Home Depot."

The court notes that the Second Amended Complaint does not clearly allege retaliation based on this September 23, 2003 letter. Rather, the tenor of the letter itself, in addition to the Second Amended Complaint, the two EEOC charges, and the plaintiff's brief speak primarily to retaliation for the sexual harassment complaint allegedly filed while working at Target.

Nevertheless, the court now considers the September 23, 2003 letter. In paragraph 12(A) of her Second Amended Complaint, the plaintiff wrote that "[w]hile working at the Horn Lake,

Mississippi store, Plaintiff was suffering unwarranted harassment and discipline. In order to put a stop to such harassment, Plaintiff wrote a letter to the Regional Human Resource [sic] Travis Lawrence and her immediate supervisor John Stygles. Shortly thereafter, Plaintiff was transferred to the Memphis, Tennessee store and the harassment situation worsened." The court construes this statement as a claim that she was retaliated against in the form of her transfer from the Horn Lake, Mississippi store to the Riverdale store in Memphis in February 2004.

Regarding the first element for a retaliation claim, that the plaintiff participated in statutorily protected activity, it appears undisputed that writing such a letter to Home Depot's HR department is protected activity.

However, the problem for the plaintiff is meeting the second element, that she received an adverse employment action when she was transferred in February 2004. With regard to the adverse employment action element, the Supreme Court recently observed in *Burlington Northern & Santa Fe Railway Co. v. White* that :

> [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination."We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed.1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and " 'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The anti-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms.  It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. We refer to reactions of a *reasonable* employee because we believe that the provision's

standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.

— U.S. — , 126 S.Ct. 2405, 2415,(2006) (internal citations omitted).

It is undisputed that when the plaintiff was transferred from the Horn Lake, Mississippi store to one of the Memphis stores some twenty miles away, her rate of pay, benefits, and position remained the same. It is also undisputed that Redmon's reason for transferring her, *i.e.*, her low apprehension rate, was legitimate. Indeed, the plaintiff never disputes the veracity of any of the reasons given for her substandard performance reviews, her discipline notices, her transfer, or her termination. Accordingly, the court concludes as a matter of law that her transfer was not an objectively adverse employment action.

Since the plaintiff can demonstrate no genuine issue of material fact as to the second element of those required to establish retaliation as to her February 2004 transfer, the court concludes that summary judgment should be granted on this claim in addition to that based on her termination.

### D. Malicious Interference with Employment Contract

The plaintiff also alleges a claim against Redmon individually for malicious interference with her employment contract under Mississippi law. To establish such a claim, the plaintiff must demonstrate that the acts (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss. *Par Industries v. Target Container Co.*, 708 So.2d 44, 48 (Miss. 1998). "On the other hand, one occupying a position of responsibility on behalf of another is privileged, within the

scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Shaw v. Burchfield*, 481 So.2d 247, 255 (Miss. 1985).

The plaintiff alleges that her supervisor, Redmon, maliciously interfered with her employment contract with Home Depot by allegedly harassing her by "playing with" her work schedule by giving her "undesirable" hours, transferring her, and ultimately terminating her.

Apparently, the plaintiff does not dispute these actions were not without right or justifiable cause given that she does not dispute the basis of her substandard performance evaluations, her discipline notices, and the two "bad stops" that were in violation of Home Depot's External Policy Guidelines regarding apprehension of suspected shoplifters. Furthermore, it is undisputed that Redmon himself did not make the decision to terminate the plaintiff, rather, that decision was made by his supervisor, Ted Suppinger.

Accordingly, the court concludes that the plaintiff cannot meet the third element of a malicious interference with an employment contract claim, *i.e.*, that the alleged acts were done without right or justifiable cause on the part of the defendant. Therefore, she cannot avoid summary judgment thereon.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendants' Motion for Summary Judgment [51-1] should be granted and all of the plaintiff's claims should be dismissed with prejudice. Accordingly, an Final Judgment shall issue forthwith,

**THIS DAY** of November 3, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE